## 20766

William C. JAMISON, Appellant, v. George HOWARD, Jr. and James Hallums, Defendants, of whom George Howard, Jr., is Respondent.

(247 S. E. (2d) 450)

*Jefferson V. Smith, Jr.,* of *Carter, Philpot, Johnson & Smith, Greenville, for appellant.*

*J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent.*

September 14, 1978.

LEWIS, Chief Justice:

This action was instituted by plaintiff-appellant against the defendant-respondent, George Howard, Jr., as the principal, and defendant James Hallums, as Howard's agent, to recover damages sustained from a gunshot wound which rendered appellant a paraplegic. The respondent Howard alone moved for summary judgment. His motion for summary judgment was granted by the lower court upon the ground that there was no evidence upon which to base the conclusion that defendant Hallums was his agent at the time of the alleged assault, which showing was, admittedly, necessary in order to fasten liability upon respondent. This appeal is from the order for summary judgment.

In determining whether summary judgment was properly granted, we consider the testimony and the reasonable inferences to be drawn therefrom in the light most favorable to appellant. We stated in *Gardner v. Campbell,* 257 S. C. 209, 184 S. E. (2d) 700, that, even where there is no dispute as to the evidentiary facts, but only as to conclusions or inferences to be drawn therefrom, summary judgment should not be granted. Our statement of the facts is governed by these principles, and no attempt is made to recite the conflicting testimony.

Respondent is the owner of Howard's Party Shop and defendant Hallums was employed by respondent as the man-

ager. Appellant operated the Chocolate City Lounge and on two or three prior occasions had brought quantities of beer and wine at respondent's Party Shop on credit until such time as he could sell the beer and wine in his lounge. On each occasion appellant dealt with defendant Hallums who was the manager of the respondent's business. When appellant sold the beer and wine, he customarily returned to respondent's place of business and paid the purchase price to the manager (Hallums) who put the money into the cash register. There was never any indication to appellant that his credit purchases of beer and wine from defendant Hallums were not direct purchases from respondent's Party Shop.

In December 1975, appellant purchased on credit another quantity of beer and wine from respondent's Party Shop, dealing with the manager Hallums under the same procedures as in prior purchases. This purchase was in the amount of $189.00. Subsequently the beer and wine purchased in December 1975 was stolen from appellant's place of business and he was unable to pay for it as he had agreed. After two prior attempts to collect, defendant Hallums and one Marvin Morgan went to appellant's apartment in January 1976 in a further attempt to collect for the beer and wine purchased at respondent's Party Shop. When appellant failed to pay, defendant Hallums handed a pistol to Morgan, which had been furnished by respondent to him for use about the business, and instructed Morgan to kill appellant; whereupon Morgan shot appellant and rendered him paraplegic.

This action was thereafter brought against respondent and his store manager Hallums to recover for appellant's injuries, upon allegations that defendant Hallums was acting as the agent of respondent in the efforts to collect the debt from appellant. We think that there was evidence from which a reasonable inference could be drawn that defendant Hallums was acting as respondent's agent at all pertinent times; and the lower court was, therefore, in error in granting the motion for summary judgment.

Although respondent denies the authority of defendant Hallums, as his store manager, to sell goods on credit to appellant and asserts that the credit sale in question was a transaction between Hallums and the appellant, in which he was not involved or in anyway liable, it is nevertheless inferable from the testimony that defendant Hallums, as respondent's store manager, sold the beer and wine on credit to appellant and that at the time of the assault and battery upon appellant, Hallums was on a mission to collect the debt due respondent's Party Shop. It is, therefore, inferable that Hallums was acting for the store owner (respondent) in the collection of the debt, so as to render respondent liable for the assault and battery committed upon appellant. *Jones v. Elbert,* 211 S. C. 553, 34 S. E. (2d) 796.

The conflicting testimony and reasonable inferences therefrom prohibit the resolution of the issue of agency on motion for summary judgment.

In reaching the decision herein, we find it unnecessary to determine the issues raised relative to the admissibility of testimony.

Judgment is reversed and the cause remanded for further proceedings.

LITTLEJOHN, RHODES and GREGORY, JJ., concur.

NESS, J., dissents.

LITTLEJOHN, Justice (concurring) :

I concur in the opinion of Mr. Chief Justice Lewis.

The summary judgment rule is a good one and has well served courts and litigants in this state; it should, however, be used with caution. Relief granted under the summary judgment rule is more drastic than relief granted by a nonsuit or by a directed verdict.

In determining whether a summary judgment motion should be granted, the overall picture must be viewed, and to some extent the judge is entitled to consider the credibil-

ity of the witnesses. Showing on a summary judgment is a "paper showing", and affidavits and even depositions are not normally the best way to ascertain the truth of a matter. The rule requiring direction of a verdict and the rule requiring a summary judgment are stated differently, but the essence of the relief granted is basically the same. *Ayers v. Pastime Amusement Co.,* 283 F. Supp. 773 (D. S. C. 1968), *Sartor v. Arkansas Nat. Gas. Corp.,* 321 U. S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944). In each instance, the judge holds as a matter of law that there are no facts to be determined.

We have held that a motion for a directed verdict need not be granted even though the evidence is undisputed or uncontradicted if there is reason to discredit it. *State v. Richburg,* 250 S. C. 451, 158 S. E. (2d) 769 (1968). The plaintiff is never relieved of the burden of proof, but in granting the summary judgment in this case the court must weigh the difficulty of proof and the fact that the two defendants have control of virtually all of the relevant evidence of agency. In *Brock v. Carolina Scenic Stages,* 219 S. C. 360, 65 S. E. (2d) 468 (1961), this court held that since the defendants had control of the relevant evidence, a nonsuit should not have been granted and that the court should have at least required the defendants to go forward with evidence.

There are many reasons to discredit the showing made in this case on behalf of both Hallums and Howard. The testimony of Howard, the employer, and Hallums, his former employee, to the effect that there was no agency relationship between them, is subject to impeachment. Howard stands to lose a considerable sum if agency is shown. Hallums has been convicted of ordering, in cold blood, the execution of a debtor. And, he owes many debts to Howard. Howard posted a five thousand dollar bond for Hallums, provided alibi testimony for him at his trial, and, after his conviction, attempted to have him moved from prison to a more favorable location.

When a judge directs a verdict, in effect he says to the jury: "You must believe the evidence which has been presented." When a judge grants a summary judgment, in effect he says: "I have no alternative but to believe the testimony which has been submitted to me by affidavits, depositions, etc., and a jury would not be justified in disbelieving such evidence." The showing made in this case simply does not warrant the relief granted.

NESS, Justice (dissenting):

I dissent, concluding that Hallums was not acting within the scope of his employment when he ordered Morgan to shoot appellant.

According to § 228(1) of the Restatement of Agency, Second:

"Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."

The record in this case is utterly devoid of any evidence which would satisfy the foregoing criteria.

There was no evidence that Hallums' scope of employment as manager of Howard's Party Shop included collecting debts. See 22 A. L. R. (2d) 1227. In fact, the evidence was undisputed that Hallums had been instructed by Howard not to sell merchandise on credit. The instant assault occurred after working hours, away from the shop. Moreover, Howard could not anticipate that the manager of his party shop would order a customer killed as part of his duties.

In *McDermott v. American Brewing Co.*, 105 La. 124, 29 So. 498 (1901), a servant had no authority to make a credit sale but, nevertheless, extended credit. In attempting to collect the debt, he assaulted the plaintiff. The Court held the master was not liable as the servant was not serving the interest of his master.

Hallums' outrageous and unprovoked attack on appellant indicates he was acting from purely personal motives. See Prosser, Law of Torts, 4th Ed. 1971, page 465. As manager of a party shop, Hallums could not be expected to use force in the performance of his duties as might a police officer, a night watchman, or a "bouncer." See *Beggerly v. Walker*, 194 Kan. 61, 397 P. (2d) 395 (1964); *Taylor v. City of Baton Rouge, et al.*, 233 So. (2d) 325 (La. App. 1970). Even employees who have implied authority to use force would be acting outside the scope of their employment in perpetrating such a violent, unjustified assault.[1] Moreover, there is no indication that Hallums had been violent in the past or that Howard retained him in his employ with knowledge of such a propensity. See *Mistletoe Express Service, Inc. v. Culp*, 353 P. (2d) 9 (Okl. 1959); *Lane v. Modern Music, Inc.*, 244 S. C. 299, 136 S. E. (2d) 713 (1964).

In *Simmons v. Okeetee Club*, 86 S. C. 73, 68 S. E. 131 (1910), the Court declined to hold a corporation liable for the act of its agent in shooting a property owner who had cut down a fence built by the corporation, even though the agent was charged with the duty of keeping the fence. The Court stated:

"[W]e fail to see what relation the shooting had to the protection of the property, as it could not be successfully contended that it would prevent the plaintiff, in [the] future, from cutting the fence." 86 S. C. at 76, 68 S. E. at 132.

---

[1] *Henderson v. Laclede Radio, Inc.*, 506 S. W. (2d) 434 (Mo. 1974), a salesman for a radio station, attempting to collect a debt due the station, on salesman's own time, held not in scope of employment. *Wellman v. Pacer Oil Co.*, 504 S. W. (2d) 55 (Mo. 1973), where a gas station attendant in an attempt to collect debt shot patron.

Similarly in this case, the shooting of appellant had no relation to the management of Howard's Party Shop. It was a crime perpetrated by Hallums outside the scope of his employment. See *Wegner v. Delly-Land Delicatessen, Inc.,* 270 N. C. 62, 153 S. E. (2d) 804 (1967).

Even if it is assumed that the purpose of Hallums was to benefit Howard, that in itself would not make the latter liable. *Clemmons v. Life Insurance Company of Georgia,* 274 N. C. 416, 163 S. E. (2d) 761, 765 (1968).

It is inconceivable that Hallums was within the scope of his employment in attempting to kill appellant. If appellant had died, there would be no one to pay, how could this be in furtherance of employment?

I would adopt the statement:

"To assault and beat a creditor is not a recognized or usual means resorted to for the collection of a debt, nor is it one likely to bring about a settlement of a disputed account . . ." *Collette v. Rebori, et al.,* 107 Mo. App. 711, 82 S. W. 552, 555 (1904).

In sum, and to repeat with some embellishment what I stated at the beginning of this dissent: Hallums was not employed to collect debts of his employer; was not at his place of business and, this incident occurred after business hours—all unexpected by his employer.

"To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts—, or collection of accounts, does not ordinarily have this tendency." See Restatement of the Law, Agency (2d), § 245, p. 539.

This Court has uniformly held:

" '[T]he liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business *acting outside of his employment* the mas-

ter is not liable.' " (Emphasis added). *Bolin v. Bostic, et al.,* 235 N. C. 319, 322, 111 S. E. (2d) 557, 558 (1959).

Also, an assault resulting from an attempt on the part of the employee to collect money due the employer, the latter is not to be held accountable. 6 Am. Jur. (2d), Assault & Battery, § 144, p. 122.

I would concede that the policy of the law of this State is to hold the master responsible for the torts of the servant although in fact the tort was committed against the will of the master and in violation of his rules or instructions. However, outside of the scope of employment the servant is his own master, responsible alone, as other persons, for his wrongs.

Appellant asserts it was error to grant respondent's motion for summary judgment. In my opinion, there is no evidence from which the authority of the agent to act upon or in relation to the subject matter involved may be legitimately inferred by the Court. As there is only one inference to be drawn from the record, the question is one of law. *LePore v. Gulf Oil Corp.,* 237 Md. 591, 207 A. (2d) 451 (1965). [2]

I would hold Howard entitled to judgment as a matter of law and affirm the order of summary judgment.

---

[2] For related cases, see 34 A. L. R. (2d) 372 at 402, 430 and 436.